FILED

2021 Dec-30  AM 09:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| **JUSTIN BERNARD ALLEN,** ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **4:20-cv-00942-CLM** |
| ) | |
| **KILOLO KIJIKAZI,** ) | |
| **Acting Commissioner** ) | |
| **of the Social Security** ) | |
| **Administration,** ) | |
| **Defendant.** ) | |

## <u>MEMORANDUM OPINION</u>

Justin Bernard Allen seeks disability, disability insurance, and Supplemental Security Income ("SSI") from the Social Security Administration ("SSA") based on several impairments. The SSA denied Allen's application in an opinion written by an Administrative Law Judge ("ALJ"). Allen argues: (1) that the ALJ erred in evaluating opinion evidence from Dr. June Nichols; (2) that the ALJ erred in finding at Step 3 of the SSA's five-step evaluation process that his impairments don't meet listings 12.03, 12.04, and 12.06; and (3) that the ALJ's decision lacks the support of substantial evidence.

As detailed below, the ALJ applied the correct legal standards and substantial evidence supports his decision. So the court will **AFFIRM** the SSA's denial of benefits.

I.      **Statement of the Case**

A.      **Allen's Disability, as told to the ALJ**

Allen was 28 years old at the time of his alleged disability onset date. R. 28. And he has past relevant work as an automobile seat cover installer, construction worker, seasoning mixer, and poultry worker. *Id.*

In his disability report, Allen alleged that he suffered from auditory hallucinations, schizophrenia, panic attacks, depression, and suicidal ideation. R. 207. At the ALJ hearing, Allen testified that he believes he cannot hold down a job because of his mental health problems. R. 47. Allen also testified that he's had several inpatient hospitalizations for mental health problems and that he's had issues with drugs. R. 47–48. But Allen said that even when he's been clean, he's suffered from insomnia, anxiety, panic attacks, and feeling depressed about his "situation in life." R. 48. Though Allen stated that he takes medication for these impairments, he testified that he feels that the medication hasn't helped. R. 49.

Three days a week, Allen sleeps over 10 hours per day. R. 50. And Allen stated that he sometimes "flip[s] out," which led to a recent arrest for assaulting another person. R. 50–51.

B.      **Determining Disability**

The SSA has created the following five-step process to determine whether an individual is disabled and thus entitled to benefits under the Social Security Act:

| The 5-Step Test | | |
|---|---|---|
| Step 1 | Is the Claimant engaged in substantial gainful activity? | If yes, claim denied. If no, proceed to Step 2. |
| Step 2 | Does the Claimant suffer from a severe, medically-determinable impairment or combination of impairments? | If no, claim denied. If yes, proceed to Step 3. |
| Step 3 | Does the Step 2 impairment meet the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appx. 1? | If yes, claim granted. If no, proceed to Step 4. |
| *Determine Residual Functional Capacity* | | |
| Step 4 | Does the Claimant possess the residual functional capacity to perform the requirements of his past relevant work? | If yes, claim denied. If no, proceed to Step 5. |
| Step 5 | Is the Claimant able to do any other work considering his residual functional capacity, age, education, and work experience? | If yes, claim denied. If no, claim granted. |

*See* 20 C.F.R. §§ 404.1520(a), 404.1520(b) (Step 1); 20 C.F.R. § 404.1520(c) (Step 2); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 (Step 3); 20 C.F.R. § 404.1520(e-f) (Step 4); 20 C.F.R. § 404.1520(g) (Step 5). As shown by the gray-shaded box, there is an intermediate step between Steps 3 and 4 that requires the ALJ to determine a claimant's "residual functional capacity," which is the claimant's ability to perform physical and mental work activities on a sustained basis. This intermediate step and Step 3 are the most important steps here, as Allen's challenges flow from the ALJ's decisions at these points in the evaluation process.

### C.    Allen's Application and the ALJ's Decision

The SSA reviews applications for disability benefits in three stages: (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1-4).

Allen applied for disability insurance benefits, a period of disability, and SSI in September 2017, claiming that he was unable to work because of various ailments, including anxiety, depression, schizophrenia, and auditory hallucinations. After receiving an initial denial in December 2017, Allen requested a hearing, which the ALJ conducted in July 2019. The ALJ ultimately issued an opinion denying Allen's claims in August 2019. R. 7–27.

At Step 1, the ALJ determined that Allen was not engaged in substantial gainful activity and thus his claims would progress to Step 2.

At Step 2, the ALJ determined that Allen suffered from the following severe impairments: anxiety/obsessive disorder; substance-induced psychotic disorder with hallucinations; and substance addiction (synthetic marijuana and alcohol) disorders.

At Step 3, the ALJ found that none of Allen's impairments, individually or combined, met or equaled the severity of any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. So the ALJ next had to determine Allen's residual functional capacity.

The ALJ determined that Allen had the residual functional capacity to perform a full range of work at all exertional levels with the following nonexertional limitations:

- Allen must be limited to unskilled work, which is simple, repetitive, and routine.

- Allen's supervision must be casual, supportive, and non-confrontational.

- Interpersonal contact with supervisors and coworkers must be incidental to the work performed.

- Allen will do best in a well-spaced work setting with his own work area, or, where he can frequently work alone.

- Allen will only be able to handle occasional tasks that require coordinated effort with coworkers.

- Allen must not be required to work at fast-paced production line speeds.

- Allen should have only occasional, gradually introduced workplace changes.

- Allen must have normal, regular work breaks at least every two hours.

- Allen should have only occasional, casual contact with the general public.

- Allen will likely miss as much as one day per month dealing with mental health symptoms.

At Step 4, the ALJ found that Allen could not perform his past relevant work.

At Step 5, the ALJ determined that Allen could perform jobs, such as cleaner II and

floor waxer, that exist in significant numbers in the national economy and thus Allen was not disabled under the Social Security Act.

Allen requested an Appeals Council review of the ALJ's decision. The Appeals Council will review an ALJ's decision for only a few reasons, and the Appeals Council found no such reason under the rules to review the ALJ's decision. As a result, the ALJ's decision became the final decision of the SSA Commissioner, and it is the decision subject to this court's review.

## II.   Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of the court's review is limited to (a) whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and (b) whether the ALJ applied the correct legal standards, *see Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford*, 363 F.3d at 1158.

## III.   Legal Analysis

Allen makes three arguments for why the ALJ erred in finding him not disabled. First, Allen argues that the ALJ erred in discounting the opinion evidence

from Dr. June Nichols, a consultative psychologist. Second, Allen asserts that the ALJ erred in finding at Step 3 that his mental impairments didn't meet listings 12.03, 12.04, or 12.06. Finally, Allen contends that the ALJ's decision lacks the support of substantial evidence. The court will address each argument in turn.

### A.   The ALJ properly evaluated Dr. Nichols' opinion evidence.

Allen first argues that the ALJ improperly discounted the opinion of Dr. June Nichols who performed a psychological consultative examination on Allen in November 2017. After the consultative examination, Dr. Nichols wrote that "[p]rognosis for significant improvement over the next 12 months is guarded." R. 434. But she noted that if Allen continued to avoid using synthetic marijuana and follow up with therapy and medication her prognosis would improve. *Id.*

Dr. Nichols then stated that Allen "appeared able to understand instructions, but might not be able to remember and carry out instructions." *Id.* And Dr. Nichols found that Allen cannot sustain concentration and persist in work related activity at a reasonable pace. *Id.* Dr. Nichols also determined that Allen is likely unable to maintain effective social interaction on a consistent and independent basis or to deal with normal pressures in a competitive work setting. *Id.* But Dr. Nichols did find that Allen likely can manage his own funds. *Id.*

The ALJ gave Dr. Nichols' opinion little weight, finding that it contradicted her examination findings that Allen "was oriented x4, with clear stream of

consciousness, fair mental processing speed, ability to perform addition and subtraction, grossly intact recent and remote memory, adequate general fund of information, abstract thinking, and good judgment and insight." R. 18. The ALJ also noted that Dr. Nichols said Allen's prognosis would improve if he stayed off drugs. *Id.* Finally, the ALJ found Dr. Nichols' opinion to contradict medical evidence that showed that Allen "stopped having auditory hallucinations or suicidal/homicidal thoughts when he abstained from substance abuse and complied with treatment." *Id.*

Allen raises five arguments related to the ALJ's handling of Dr. Nichols' medical opinion.

1. ALJ substituted his judgment for that of Dr. Nichols: Allen first argues that the ALJ improperly substituted his judgment for the judgment of Dr. Nichols. "[T]he ALJ may not make medical findings herself." *Ybarra v. Comm'r of Soc. Sec.*, 658 F. App'x 538, 543 (11th Cir. 2016). But it is the role of an ALJ to resolve conflicting medical evidence. *See Watson v. Heckler*, 738 F.2d 1169, 1172 (11th Cir. 1984). Here, the ALJ did not take on the role of a physician. Instead, the ALJ resolved conflicting medical evidence by assigning only little weight to Dr. Nichols' opinion. So Allen's argument that the ALJ improperly substituted his judgment for that of Dr. Nichols' judgment fails.

2. 'Some measure of clarity' lacking: Allen asserts that the ALJ failed to provide "some measure of clarity" for why he gave Dr. Nichols' opinion little

weight. An ALJ "must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Thus, "when the ALJ fails to state with at least some measure of clarity the grounds for his decision," it is inappropriate to affirm "simply because some rationale might have supported the ALJ's conclusion." *Id.* (quotations and citations omitted).

As detailed above, the ALJ gave several specific reasons for why he assigned Dr. Nichols' opinion little weight. So Allen's argument that the ALJ failed to adequately explain the decision to discount Dr. Nichols' opinion lacks merit.

3. <u>'Degree of suspicion' standard should apply</u>: Citing *Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir. 1995), Allen next asks the court to apply 'a degree of suspicion' to the ALJ's decision to assign little weight to Dr. Nichols' opinion.

The court declines to apply the 'degree of suspicion' standard to the ALJ's assessment of Dr. Nichols' medical opinion for two reasons. First, the Eleventh Circuit has not adopted the 'degree of suspicion' standard. *See Jackson v. Soc. Sec. Admin., Comm'r*, 779 F. App'x 681, 685 (11th Cir. 2019). Second, even if *Wilder* controlled, *Wilder* is distinguishable from the facts here. In *Wilder*, the consultative examiner's opinion contained the only medical evidence of the claimant's mental impairments. *See Wilder*, 64 F.3d at 337–38. But here the record includes other

opinions and evidence on Allen's mental impairments. So—even if the Eleventh Circuit adopted *Wilder*'s analysis—*Wilder* does not apply to these facts.

4. <u>No good cause</u>: Allen's fourth argument is that the ALJ erred because he lacked good cause to discount Dr. Nichols' opinion and much of the objective medical evidence supports her opinion. This argument fails for two reasons. First, because Dr. Nichols was a one-time consultative examiner, her opinion isn't entitled to any deference. *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). So the ALJ didn't need good cause to reject her opinions.[1]

Second, under substantial evidence review, the question isn't whether there is substantial evidence in the record that supports Dr. Nichols' opinion. Instead, the question is whether substantial evidence supports the ALJ's decision to assign Dr. Nichols' opinion little weight. And Allen doesn't argue, much less show, that the ALJ's reasons for discounting Dr. Nichols' opinion lacked the support of substantial evidence.

In any event, the ALJ gave valid reasons for assigning Dr. Nichols' opinion little weight. As the ALJ correctly noted, Dr. Nichols' opinion contradicted her examination findings that Allen was oriented x4, had clear stream of consciousness,

---

[1] Even if Dr. Nichols were Allen's treating physician, the SSA's regulations for claims filed after March 27, 2017 would apply to the ALJ's evaluation of Dr. Nichols' opinions. And under these new regulations, an ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 CFR § 404.1520c(a).

had fair mental process speed, could perform addition and subtraction, had grossly intact recent and remote memory, had an adequate general fund of information, possessed abstract thinking abilities, and had good judgment and insight. R. 19, 433–34. And the ALJ reasonably found Dr. Nichols' opinion to contradict: (1) her notes that Allen would likely improve if he stopped using drugs, and (2) other medical records that showed Allen stopped having auditory hallucinations and suicidal/homicidal thoughts when he abstained from substance abuse and complied with treatment. *See Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) ("A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling."). So the ALJ properly evaluated Dr. Nichols' opinion evidence.

5. Need to recontact: Allen's fifth and final argument is that if the ALJ wasn't satisfied with Dr. Nichols' report, he could have requested more information from her. In support of this argument, Allen cites *Johnson v. Barnhart*, 138 F. App'x 266, 270–71 (11th Cir. 2005), which stated that if "after weighing the evidence, the Commissioner cannot reach a determination, then she will seek additional information or recontact the physician." *Id.* at 270. "But saying the ALJ can sometimes reach out to a physician if necessary is not the same thing as saying that the ALJ must always reach out to a physician." *Jones v. Soc. Sec. Admin. Comm'r*, 857 F. App'x 587, 591 (11th Cir. 2021). And because the ALJ ***could make*** a

disability determination here, there was no need for him to recontact Dr. Nichols. *See id.*

* * *

In summary, none of Allen's arguments persuades the court that the ALJ erred in evaluating Dr. Nichols' opinion evidence.

**B.     The ALJ didn't err at Step 3.**

Allen next asserts that the ALJ should have found that his mental impairments met Listing 12.03 (Schizophrenia), Listing 12.04 (depressive, bipolar, and related disorders), or Listing 12.06 (anxiety and obsessive-compulsive disorders). This argument fails because although Allen cites several treatment notes in support of this argument, he fails to explain how any of these records show that he met all the criteria of these listings.

At Step 3, if a claimant has an impairment that meets or equals a listing in 20 CFR Part 404, Subpart P, Appx. 1 and satisfies the SSA's duration requirement, the ALJ must find the claimant disabled. *See* 20 CFR § 404.1420(a)(4)(iii). To establish a presumption of disability based on a listing, a claimant must show "a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (citations omitted). In addition, a claimant's impairments must meet or equal ***all*** of the specified medical

criteria in a particular listing for the claimant to be disabled at Step 3. *Sullivan v. Zebley*, 493 U.S. 521, 530–32 (1990). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Id.* at 531.

To satisfy listings 12.03, 12.04, and 12.06, Allen must show that his mental impairments satisfy either the requirements of both paragraphs A and B of each listing or the requirements of both paragraphs A and C of each listing. 20 CFR Part 404, Subpart P, Appx. 1, § 12.00A(2). The ALJ found that Allen didn't meet a listing because his mental impairments didn't satisfy either the paragraph B or paragraph C criteria. R. 13–14. While Allen doesn't argue that he satisfies the paragraph C criteria, he does assert that he meets the paragraph B criteria.

A claimant's mental impairments satisfy the paragraph B criteria of listings 12.03, 12.04, and 12.06 when the mental impairments "result in 'extreme' limitation of one, or 'marked' limitation of two, of [these] four areas of mental functioning":

- understand, remember, or apply information;

- interact with others;

- concentrate, persist, or maintain pace; and

- adapt or manage oneself.

20 CFR Part 404, Subpart P, Appx. 1, § 12.00A(2)(b). A claimant has a marked limitation when the claimant's functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited. 20 CFR 404, Subpart P, Appx. 1, § 12.00F(2). A claimant has an extreme limitation when the claimant cannot function in this area independently, appropriately, effectively, and on a sustained basis. *Id.*

The ALJ found that Allen has moderate limitations in understanding, remembering, or applying information. R. 13. In making this determination, the ALJ recognized that Allen alleged that "he has difficulty remembering generally, understanding what is said to him, following instructions, completing tasks, paying bills, taking medications without reminders, and shopping." *Id.* But the ALJ noted that Allen also stated that he could go to doctor's appointments and that the record showed Allen had short-term and long-term memory within normal limits and average intellectual functioning. *Id.* (citing R. 219, 411, 500–01).

The ALJ also found that Allen has moderate limitations in interacting with others. *Id.* As the ALJ noted, Allen alleged that he has trouble getting along with others. *Id.* But Allen also stated that he could live with others. *Id.* (citing R. 215). And as the ALJ explained, the record showed that: (1) Allen's treatment notes described him as pleasant and cooperative, (2) Allen appeared comfortable during

appointments, (3) Allen reported having a girlfriend and attending church, and (4) Allen worked part time. *Id.* (citing R. 411, 387–88, 436, 519).

The ALJ then found that Allen has moderate limitations in his ability to concentrate, persist, or maintain pace. As the ALJ recognized, Allen alleged that he has limitations in concentrating generally, following instructions, and completing tasks. *Id.* But Allen also stated that he can watch TV. *Id.* (citing R. 215). And the medical records showed that when Allen complied with treatment and didn't abuse substances: (1) he had an appropriate appearance, normal body movement/motor activity, cooperative behavior, and appropriate speech; (2) his intelligence was estimated as average; (3) he had dysphoric mood with appropriate affect, normal thought processes, and normal intellectual functioning; (4) he had no suicidal or aggressive thoughts; (5) he had orientation and memory within normal limits; and (6) he had fair judgment and limited insight. *Id.* (citing R. 500–01).

The ALJ finally found that Allen has moderate limitations in his ability to adapt or manage himself. R. 14. As the ALJ noted, Allen asserted that he suffered from auditory hallucinations. *Id.* (citing R. 216). But the medical evidence showed that Allen stopped having auditory hallucinations or suicidal/homicidal thoughts when he abstained from substance abuse and complied with treatment. *Id.* (citing R. 411, 503–08). And as the ALJ noted, at various appointments, Allen appeared clean and appropriate in appearance. *Id.* (citing R. 387, 428, 515). Because the ALJ

determined that Allen's mental impairments do not cause at least two 'marked' limitations or one 'extreme' limitation, he found that Allen's conditions failed to satisfy the paragraph B criteria. *Id.*

Substantial evidence supports the ALJ's assessment of the paragraph B criteria. It is not this court's role to "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Winschel*, 631 F.3d at 1178. And Allen doesn't challenge the ALJ's reliance on the evidence he cited to determine that Allen's impairments failed to satisfy the paragraph B criteria. Instead, Allen argues that Dr. Nichols' consultative evaluation establishes that he met the paragraph B criteria. As discussed above, the ALJ properly discounted the opinion evidence from Dr. Nichols. And having reviewed Dr. Nichols' evaluation and the evidence the ALJ cited, the court finds that a reasonable person could conclude, as the ALJ did, that Allen's mental impairments don't satisfy the paragraph B criteria. So substantial evidence supports the ALJ's finding that Allen's mental impairments didn't meet listings 12.03, 12.04, or 12.06.

## C.      Substantial evidence supports the ALJ's decision.

Allen finally argues that the ALJ's decision lacks the support of substantial evidence. In support of this argument, Allen first assets that the ALJ erred by failing to find that Allen met listings 12.03, 12.04, and 12.06 and in disregarding the

opinions of Dr. Nichols. As discussed above, the court finds these arguments unpersuasive.

Allen also asserts that the ALJ erred in relying on the vocational expert's testimony to find that he was not disabled because the hypothetical question posed to the vocational expert didn't include all his limitations. According to Allen, the hypothetical question the ALJ relied on to deny benefits was deficient because it (1) didn't accurately state his pain level or residual functional capacity, and (2) assumed Allen could perform a full range of unskilled work with no reference to his severe mental problems or anticipated missed work because of his mental problems.

"[F]or a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Id.* at 1180. But if substantial evidence supports the ALJ's finding that the claimant does not have a particular limitation, the ALJ need not include that limitation in his hypothetical question to the vocational expert. *Crawford*, 363 F.3d at 1161.

Although Allen argues otherwise, the ALJ's hypothetical question to the vocational expert accounted for his mental impairments. For example, the ALJ limited Allen's interpersonal contact with supervisors and coworkers as incidental to the work performed. R. 53. And the ALJ stated that Allen would work best in a well-spaced work setting with his own work area or where he can frequently work

alone. *Id.* The ALJ's hypothetical question also expected that Allen would miss as much as one day of work per month to deal with his mental health symptoms. *Id.* Allen hasn't explained what other mental limitations and impairments he has that the ALJ didn't include in his hypothetical question. So the court finds that the ALJ properly relied on the vocational expert's response to his hypothetical question to determine that Allen could perform jobs that exist in significant numbers in the national economy. In short, substantial evidence supports the ALJ's finding that Allen is not disabled.

## IV.  Conclusion

In summary, the court has reviewed the parties' briefs, the ALJ's findings, and the record evidence and finds that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision. So the court will **AFFIRM** the SSA's denial of benefits. The court will enter a separate final order that closes this case.

**DONE** on December 30, 2021.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE